UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Heather Gillespie and Angela Cinson individually and on behalf of all similarly situated individuals, | ) ) ) |
| | ) Case No.: 05-C-0138 |
| | ) |
| | ) Judge: Matthew F. Kennelly |
| Plaintiffs, | ) |
| | ) Magistrate Judge: Martin C. Ashman |
| v. | ) |
| | ) (Class Action) |
| Equifax Information Services, LLC | ) |
| | ) A JURY TRIAL IS REQUESTED |
| Defendant. | ) |

## FOURTH AMENDED CLASS ACTION COMPLAINT

### Introduction

1.  This class action alleges that Defendant Equifax Information Services ("Equifax"), a credit reporting agency, fails to maintain "reasonable procedures" designed to avoid the reporting of obsolete information about consumers with reported delinquent credit accounts in violation of § 1681e(a) of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681e(a). The action further alleges that when persons with reported delinquent credit accounts request the information contained in their "file," Equifax fails to disclose *all* information in their file as required by 15 U.S.C. § 1681g(a)(1). Specifically, Equifax fails to disclose the "date of delinquency" on each account which is reported as being delinquent. The "date of delinquency" is important because it is the date for triggering the seven year period after which such adverse information cannot be reported. 15 U.S.C. § 1681c(a)(4).

2.  Equifax's procedures allow companies who purchase charged-off delinquent debt, such as the Sherman Financial Group, LLC, ("Sherman" or "Sherman Entities") to create and furnish false "dates of delinquency" to Equifax. Sherman's practice effectively "re-ages" the debt to

improperly enlarge the FCRA's seven year limitations period for reporting delinquent accounts.

3. Equifax has not established procedures with Sherman that avoid the risk that obsolete information is being furnished. Nor does Equifax clearly and accurately disclose the reported date of delinquency to consumers.

4. Equifax's conduct violates § 1681g(a)(1) and 1681e(a) of the FCRA. The Representative Plaintiffs, therefore, seek monetary relief with respect to these alleged violations of the of the FCRA pursuant to 15 U.S.C. § 1681(n) on behalf of defined classes of persons.

## Jurisdiction and Venue

5. This action arises under the FCRA, 15 U.S.C. § 1681 *et. seq.* Federal question jurisdiction properly exists over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p). Venue is proper under 28 U.S.C. § 1391(b) because Equifax transacts business in this district.

## Parties

6. Plaintiff Heather Gillespie is an individual who resides at 68 Laurel Drive, Maple Shade, NJ 08052. Sherman purchased a delinquent account in Ms. Gillespie's name and furnished information on that account to Equifax.

7. Plaintiff Angela Cinson is an individual who resides at 2122 Hawthorne Lane, 2122H, Burlington, NC 27215. Sherman purchased a delinquent account in Ms. Cinson's name and furnished information on that account to Equifax.

8. Defendant Equifax Information Services, LLC, is a Georgia limited liability company with its principal place of business at 1550 Peachtree Street, NW, Atlanta, GA 30309. Equifax is engaged in the business of collecting, organizing, and managing numerous types of credit, financial, public record, demographic and marketing information regarding individuals and businesses

throughout the United States. Customers of Equifax utilize this information to make decisions for a wide range of credit purposes, such as whether to, and on what terms to, approve mortgage or auto loans, credit card applications, identity verification and similar business uses. Equifax is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f).

### Others

9. Sherman Financial Group, LLC is a Delaware corporation with its principal office located at 335 Madison Ave., New York, NY 10017. Sherman Financial Group, LLC operates through a controlled group of subsidiary and affiliated entities, including, but not limited to Sherman Acquisition, LP; Sherman Acquisition II, LP; Sherman Acquisition LLC; Alegis, LP; Sherman Holdings, LLC; Alegis Group, LP; Sherman Acquisition TA, LP; Resurgent Capital Services; Sherman Investments SPE, LLC; Sherman Capital Markets, LLC; LVNV Funding, Inc. and Alegis Group Loan Servicing, LLC. Sherman Financial Group, LLP and all related business entities, including but not limited to those listed above, are hereinafter referred to collectively as "Sherman."

10. Sherman is engaged in the purchase of and servicing of distressed debt. Most, if not all, of the distressed debt that Sherman purchases and services consists of consumer debt which has been placed for collection, charged to profit and loss, or subjected to similar action. Sherman purchases such debt at substantial discount. Sherman furnishes information about such accounts to consumer reporting agencies.

### STATEMENT OF FACTS

**The Date Of Delinquency Constitutes Materially Important Information
That Must Be Maintained In A Consumer's File So That Consumers Can
Determine Its Accuracy Under the FCRA File Disclosure Procedures**

11. The "date of delinquency" determines the exact "age" of credit information related

to an account placed for collection, charged to profit or loss, or subjected to any similar action. Section 1681c(a)(4) of the FCRA provides, *inter alia*, ". . . no consumer reporting agency may make any consumer report containing any of the following items of information: . . . (4) Accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c (a)(4). The seven year period for reporting accounts placed for collection or charged to profit and loss is triggered by the "date of delinquency" which is defined in § 1681c(c)(1) as follows:

> The 7-year period referred to in paragraphs (4) and (6) of subsection (a) of this Section shall begin, with respect to any delinquent account that is placed for collection (internally or by referral to a third party, whichever is earlier), charged to profit and loss, or subjected to any similar action, *upon expiration of the 180-day period beginning on the date of commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action*.

15 U.S.C. § 1681c(c)(1) (emphasis added). Thus, the maximum time period that a credit reporting agency is permitted to make a consumer report containing information about a "delinquent account" is seven years and 180 days from the date of "commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

12. The "date of delinquency" is obtained, or should be obtained, by Equifax from those persons or entities who furnish credit information to Equifax. In this regard, § 1681s-2(a)(5)(A) of the FCRA requires "furnishers" to provide the date of delinquency to a consumer reporting agency regarding delinquent accounts. Section 1681s-2(a)(5)(A) provides:

> *In general.* A person who furnishes information to a consumer reporting agency regarding a delinquent account being placed for collection, charged to profit or loss, or subjected to any similar action shall, not later than 90 days after furnishing the information, notify the agency of the date of delinquency on the account, which shall be the month and year of the commencement of

the delinquency on the account that immediately preceded the action.

15 U.S.C. § 1681s-2(a)(5)(A).

**Sherman Fails To Obtain The Date Of Delinquency And, Therefore, Reports False, More Recent Dates Of Delinquency To Credit Reporting Agencies**

13. Sherman purchases consumer debt that has placed for collection, charged to profit or loss or subject to similar action by reason of delinquency. Sherman purchases this debt at a substantial discount . In the course of its business, Sherman furnishes information about the credit accounts that they have purchased to credit reporting agencies including to Equifax.

14. However, Sherman does not obtain the date of delinquency for many, if not all, of the Sherman delinquent accounts when it purchases an account. Sherman paid so little for the debts that they do not obtain the actual account histories for each alleged debtor.

15. Sherman knew that in order to report its delinquency accounts to the credit reporting bureaus that each account reported was required to include the date of delinquency because the credit reporting bureaus programs would not accept the report unless accompanied by the date of delinquency.

16. In order to get Equifax and other consumer reporting agencies to include the distressed consumer debt included on the credit reports of consumers who allegedly owed this debt, Sherman provided a fictitious delinquency date for each account.

17. The fictitious dates that Sherman created were more recent than the actual date of delinquency. By doing so, Sherman was enabled to "re-age" the debt to extend the FCRA limitations for the reporting of delinquency accounts.

**Equifax Fails To Disclose Dates Of Delinquency Reported By
Sherman In Violation Of 15 U.S.C. § 1681g(a)(1) And, Therefore,
Impedes Consumers Right To Dispute Inaccurate Dates Of Delinquency**

18.     When the "date of delinquency" is received by Equifax from a furnisher, such as Sherman, Equifax maps the information into a data field labeled "date of last activity." Equifax however, also maps other information into this data field including the "Activity Date" (the date the account balances were last updated-Field 8, Metro 2 Header record) and the date of last payment ("Field 27 of Metro 2").

19.     When a consumer whose account has been placed for collection, charged to profit or loss, or subjected to any similar action by reason of delinquency requests his or her file, Equifax does not clearly and accurately disclose the "date of delinquency" on the account. Instead, Equifax's disclosures state that any delinquent accounts will be removed seven years after the "Date of Last Activity." The disclosures define the "date of last activity" to be the date that the last activity occurred to the account.

20.     Equifax thus fails to *clearly and accurately* disclose *all* information in the consumer's file because Equifax fails to disclose clearly and accurately the date of delinquency.

21.     Section 1681g(a)(1) provides a procedure for consumers to review the accuracy of their files maintained by a credit reporting agency. 15 U.S.C. § 1681g(a). This provision provides, *inter alia*:

> Every consumer reporting agency shall, upon request, and subject to section 1681 h(a)(1) of this title, clearly and accurately disclose to the consumer:
>
> > (1) *All information in the consumer's file at the time of the request*, except that nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating

6

to the consumer.

15 U.S.C. § 1681g(a)(1). (emphasis added).

22. For purposes of disclosure pursuant to § 1681g, "all information in the consumer's file" means *all* information regardless of how the information is stored. Section 1681a(g) of the FCRA specifically defines a "file" as "*all* of the information on that consumer *recorded and retained by a consumer reporting agency regardless of how the information is stored.*" 15 U.S.C. § 1681a(g). (emphasis added).

23. Equifax routinely, as a matter of practice and procedure, violates § 1681g(a) by failing to clearly and accurately disclose to the consumer *all* information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a)(1). Equifax does not disclose the date of delinquency, but it remains hidden.

24. Consumers have a right to obtain a *clear and accurate* disclosure of all information in their file. This information is then available to them to use to dispute information in a consumer report. The failure of Equifax to disclose the date of delinquency interferes with their legal right to dispute the accuracy of information contained in their credit file or in consumer reports. Where consumers are not provided important information in their credit file or where reasonable procedures are not in place to record, retain and disclose this material information, consumers lack the necessary information to use the dispute procedures which are a key function of the FCRA as set forth in 15 U.S.C. §§ 1681i and 1681s-2(a)(8).

25. Equifax's decision not to clearly and accurately disclose the delinquency date on delinquent or charged-off accounts to consumers with Sherman tradelines who request their consumer files from Equifax constitutes a wilful violation of the FCRA.

**Equifax Fails to Follow Reasonable Procedures Designed To Avoid Violations of § 1681c of the FCRA As Required By 15 U.S.C. § 1681e(a)**

26. The FCRA also requires Equifax to maintain reasonable procedures with its sources of adverse information that will avoid the risk of reporting obsolete adverse information. Section 1681e(a) of the FCRA provides, *inter alia*, that "... every consumer reporting agency *shall maintain reasonable procedures designed to avoid violations of section 605* [§ 1681c] . . . ." (emphasis added).

27. Equifax has failed to establish reasonable procedures to avoid reporting obsolete adverse information. Equifax has failed to establish any procedures or its existing procedures are totally inadequate and unreasonable because they allow debt purchasers, such as Sherman, to report falsely re-aged dates of delinquency.

28. Equifax acted knowingly and intentionally in conscious disregard for the rights of the consumer. Equifax adoption of policies which allow debt buyers such a Sherman to report information about delinquent accounts without any accountability and which prevent consumers from discovering the date of delinquency in connection with delinquent accounts reported to Equifax is in conscious disregard of consumers rights.

**The Claims Of The Representative Plaintiffs**

**Angela Cinson**

29. Equifax has reported derogatory information related to a Sears account in the name of Angela Cinson for more than 7 years and 180 days. The date of the delinquency occurred in this account on or about February 1997 or earlier. Therefore, this account became obsolete in 9/2004 or earlier. Equifax continues to maintain this information in Ms. Cinson's credit file and makes

consumer reports that includes this information

30. In approximately December, 2003, Angela Cinson requested a copy of her file from Equifax.

31. On or about January 7, 2004, Equifax provide what it called a "credit file" for Ms. Cinson. The report listed accounts in Ms. Cinson's name that had been reported to Equifax.

32. One account with Sears Roebuck & Co. reported that it had been charged off. The information as to this account was listed as follows:

_____

| Company Name | Account Number | Date Acct. Opened | Credit Limit | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Reviewed |
|---|---|---|---|---|---|---|---|---|
| Cbusasears | 56527**** | 06/1993 | | 0$ | | | | 51 |

_____

| Items Listed to the right are as of the Date Reported 10/2003 | Balance $ 0 | Past due | Last Pay Date | Actual Pay Amt. | Sched.Pay Amt. | Activity Description | | |
|---|---|---|---|---|---|---|---|---|
| | Date of Last Activity 10/1998 | Date Maj.Del. First Reported | Charge Off. Amt. | Deferred Pay Start Date | Balloon Pay Start Date | Creditor Classif. | Date Acct.Cl. | |

_____

Current Status- Charge Off; Type Of Account-Revolving; Whose Account- Individual
Additional Information: ACCOUNT TRANSFERRED OR SOLD

| Account History with Status Codes | 5/2003 | 04/2003 | 3/2003 | 2/2003 | 1/2003 | 12/2002 | 11/2002 | 10/2002 | 9/2002 | 8/2002 | 7/2002 | 6/2003 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | | |

| | 5/2002 | 04/2002 | 03/2002 | 02/2002 | 01/2002 | 12/2001 | 11/2001 | 10/2001 | 9/2001 | 8/2001 | 7/2001 | 6/2001 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |

| | 3/1999 | 2/1999 | 6/1998 | 5/1998 | 4/1998 | 3/1998 | 2/1998 | 1/1998 | 12/1997 | 10/1997 |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | 2 | 4 | 4 | 3 | 4 | 3 | 3 | 2 | 2 |

33. Equifax did not disclose either the date of delinquency or the charge-off date to Ms. Cinson and/or failed to have in place reasonable procedures designed to disclose this information

9

to Ms. Cinson. Another credit reporting agency reported that the account had been charged off as of 9/1997.

    34.    After Sears charged off this account to profit or loss, the account was sold to Sherman Acquisitions of Houston, Texas. With respect to the account after this transfer, the Equifax listed the following information:

| Company Name | Account Number | Date Acct. Opened | Credit Limit | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Reviewed |
|---|---|---|---|---|---|---|---|---|
| Sherman Acquisition | 56527**** | | | $2661 | | | | 1 |

| Items Listed to the right are as of the Date Reported 11/2003 | Balance | Past due | Last Pay Date | Actual Pay Amt. | Sched.Pay Amt. | Activity Description | | |
|---|---|---|---|---|---|---|---|---|
| | $2722 | $2722 | | | | | | |
| | Date of Last Activity | Date Maj.Del. First Reported | Charge Off. Amt. | Deferred Pay Start Date | Balloon Pay Start Date | Creditor Classif. | Date Acct.Cl. | |
| | 10/1998 | | | | | Financial | | |

Current Status- Collection; Type Of Account-Open; Whose Account- Individual
Additional Information: Collection Account

Company Address : 9700 Bissonnet St., Ste 2000 PO Box 740281 Houston, TX 77274-0281

    35.    Equifax did not disclose either the date of delinquency or the charge-off date to Ms. Cinson and/or failed to have in place reasonable procedures to avoid the reporting of obsolete information.

    36.    Again in January 2005, Ms. Cinson requested a copy of her file from Equifax. In response, Equifax provided a "credit file" dated January 27, 2005. Again, the file included the account with Sears reported as charged off. The information as to this account was listed as follows:

10

| Account No. | Date Open | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd. | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 56527xxxxx | 06/1993 | | | | | | Transfer/Sold/Paid | |
| Items as of Date Reported | Balance Amount | Amount Past Due | Date of Last Pmt | Actual Pmt Amt | Scheduled Pmt Amt | Date of Last Activity 10/1998 | Date Maj Del. 1st Rptd | Charge Off Amt |
| Balloon Pay Amount | Balloon Pay Date | Date Closed | | | | | | |

Current Status- Charge Off; Type Of Account-Revolving; Whose Accout- Individual
Additional Information: ACCOUNT TRANSFERRED OR SOLD

| Account History with Status Codes | 5/2003 | 04/2003 | 3/2003 | 2/2003 | 1/2003 | 12/2002 | 11/2002 | 10/2002 | 9/2002 | 8/2002 | 7/2002 | 6/2003 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| | 5/2002 | 04/2002 | 03/2002 | 02/2002 | 01/2002 | 12/2001 | 11/2001 | 10/2001 | 9/2001 | 8/2001 | 7/2001 | 6/2001 |
| | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

| 3/1999 | 2/1999 | 6/1998 | 5/1998 |
|---|---|---|---|
| 1 | 1 | 3 | 3 |

37. The date of first delinquency as defined in the FCRA occurred sometime in early 1997. Equifax maintains, or should maintain, this date, but did not disclose the date to Ms. Cinson and/or failed to avoid the reporting of obsolete information.

38. With respect to information furnished by Sherman, Equifax listed the following information:

| Account No. | Date Open | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd. | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 56527xxxxx | | $2660 | | | | 15 | | |
| Items as of Date Reported 1/2005 | Balance Amount $3015 | Amount Past Due | Date of Last Pmt | Actual Pmt Amt | Scheduled Pmt Amt | Date of Last Activity 10/1998 | Date Maj Del. 1st Rptd | Charge Off Amt |
| Balloon Pay Amount | Balloon Pay Date | Date Closed | | | | | | |

Current Status- Over 120 days past due; Type of account-Open; Type Of Loan Factoring Company Acct.; Whose Account: Individual Information: collection Account

39. Equifax did not disclose either the date of delinquency or the charge-off date to Ms.

11

Cinson and/or failed to have in place reasonable procedures to avoid the reporting of obsolete information.

**Heather Gillespie**

40. In approximately July 2004, Heather Gillespie requested a copy of her file from Equifax.

41. On or after August, 2004, Equifax provided a disclosure of its file maintained as to Ms. Gillespie.

42. As to an account with Direct Merchants Creditcard Bank of Phoenix, AZ, the file disclosure reported that this account was an individual, revolving charge account which had been charged off and that the account had been closed on 12/2001. The information as to this account was listed as follows:

**Direct Merchants Creditcard Bk** - PO Box 29458  Phoenix AZ  85038-9468

| Account No. | Date Open | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd. | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| 545800180305 | 03/1999 | $4,800 | | | | | Transfer/Sold/Paid | |

| Items as of Date Reported 09/2004 | Balance Amount $0 | Amount Past Due | Date of Last Pmt | Actual Pmt Amt | Scheduled Pmt Amt $6,236 | Date of Last Activity 07/2001 | Date Maj Del. 1st Rptd | Charge Off Amt |
|---|---|---|---|---|---|---|---|---|
| | Balloon Pay Amount | Balloon Pay Date | Date Closed 12/2001 | | | | | |

Current Status - Charge Off; Type of Account - Revolving; type of Loan - Charge Account; Whose Account - Individual Account; ADDITIONAL INFORMATION - Account Transferred or Sold; Account Transferred or Sold;

43. Equifax did not disclose the date of delinquency to Ms. Gillespie and/or failed to have in place reasonable procedures designed to disclose this information to Ms. Gillespie.

44. The date of delinquency occurred sometime prior to 12/2001 because this is the date that the account was reported as closed. Equifax maintains this date, but did not clearly and

accurately disclose the date to Ms. Gillespie and/or failed to have in place reasonable procedures designed to retain, record and disclose this information to Ms. Gillespie.

45. After Merchants Bank charged off this account to profit or loss, the account was sold to Sherman. With respect to the account after this transfer, the Equifax file disclosure listed the following information:

**Sherman Acquisition, LP** - 9700 Bissonnet St. Ste 2000 P.O. Box 740281 Houston, TX 77274-0281

| Account No. | Date Open | High Credit | Credit Limit | Terms Duration | Terms Frequency | Mnths Revd. | Activity Description | Creditor Classification |
|---|---|---|---|---|---|---|---|---|
| METRI-5800180305 | | $6,236 | | | | 24 | | Financial |

| Items as of Date Reported 10/2004 | Balance Amount $6,861 | Amount Past Due $6,861 | Date of Last Pmt | Actual Pmt Amt | Scheduled Pmt Amt | Date of Last Activity 09/2001 | Date Maj del. 1st Rptd | Charge off Amt. |
|---|---|---|---|---|---|---|---|---|
| | Balloon Pay Amount | Balloon Pay Date | Date Closed | | | | | |

Current Status - Over 120 Days Past Due; Type of Account - Open; Type of Loan - Factoring Company Account; Whose Account - Individual Account; ADDITIONAL INFORMATION - Collection Account;

46. Equifax did not disclose the date of delinquency to Ms. Gillespie and/or failed to have in place reasonable procedures designed to avoid the reporting of obsolete information.

**Class Action Allegations**

**The File Disclosure Class**

47. Representative Plaintiffs seek certification of a class of all natural persons residing in New Jersey and North Carolina who had a trade-line evidencing a delinquent or collection account in the name of one or more of the Sherman Entities on their file at Equifax and who made a file disclosure request between January 10, 2003 and the present.

**The Reasonable Procedures Class**

48. Representative Plaintiffs seek certification of a class of all natural persons residing

13

in New Jersey and North Carolina whose file at Equifax had a tradeline evidencing a delinquent or collection account in the name of any of the Sherman Entities between January 10, 2003 and the present.

49. These classes defined above expressly exclude any persons who, or transactions that, fit within "exempted cases" as that term is defined in 15 U.S.C. § 1681c(b).

## Rule 23(b)(3) Certification

### Numerosity

50. The proposed Classes are so numerous that it is impracticable to bring all persons before the Court. The exact number of class members is unknown, but is believed to include well over 1,000 persons. The exact number and identify of these persons can be determined from the records maintained by Sherman and/or Equifax. In many instances, class members either are unaware that claims exist or have sustained individual damages too small to justify the costs of bringing suit separately. When aggregated, however, individual damages are large enough to justify this class action.

### Predominance and Commonality

51. The questions of law and fact common to the claims of each class member overwhelmingly predominate over any question of law or fact affecting only individual members of the class. Questions of law and fact common to the Classes include, but are not necessarily limited to, the following:

    a. Does 15 U.S.C. § 1681g(a)(1) require Equifax to disclose all the information it has in its file to each consumer upon request, including the date of delinquency with respect to consumers whose accounts have been reported to be placed for collection, charged to profit or loss

14

or subject to similar action by reason of delinquency?

  b.  Does Equifax fail to clearly and accurately disclose the date of delinquency to consumers whose accounts have been reported to be placed for collection, charged to profit or loss or subject to similar action by reason of delinquency when the consumers make a request for their file pursuant to 15 U.S.C. § 1681g(a)(1)?

  c.  Does 15 U.S.C. 1681c(a)(4) require Equifax to have reasonable procedures in place to avoid the reporting of obsolete information to comply with its provisions?

  d.  Does 15 U.S.C. § 1681e(a) require Equifax to establish procedures with its sources of information designed to avoid the reporting of obsolete information such as:

    i.  procedures that require that a debt buyers such as Sherman to report the date the account was "charged-off";

    ii.  that require debt buyers to obtain the date of delinquency from the original creditor;

    iii.  procedures for clearly and accurately disclosing the "date of delinquency" to consumers who request their file;

    iv.  procedures that provide an opportunity for consumers to dispute the "date of delinquency" furnished by Sherman?

  e.  Does Equifax violate 15 U.S.C. § 1681g(a)(1) by failing to clearly and accurately disclose the date of delinquency to consumers whose accounts have been reported to be placed for collection, charged to profit or loss or subject to similar action by reason of delinquency in responding to requests for their file by consumers?

  f.  What policies, practices or procedures does Equifax follow in disclosing files

to consumers?

  g.  What policies, practices or procedures does Equifax follow with respect to the recording, retention and disclosure of the date of delinquency to consumers and third parties?

  h.  What policies, practices and procedures does Equifax follow with respect to the procedures that have been established with Sherman to avoid the risk of reporting obsolete information?

  i.  If Equifax fails to disclose the date of delinquency to consumers does this constitute willful noncompliance with the FCRA within the meaning of 15 U.S.C. § 1681n(a)?

  j.  If Equifax fails to have reasonable procedures to avoid the reporting of obsolete information, does this constitute willful noncompliance with the FCRA within the meaning of 15 U.S.C. § 1681n(a)?

### Typicality

52.  Representative Plaintiffs' claims are typical of absent class members' claims. Plaintiffs and the Class have sustained identical damages, and their claims arise from an identical factual background and identical legal theories as set forth in this Complaint.

### Adequacy of Representation

53.  Representative Plaintiffs will assure the adequate representation of all class members. Their claims are typical of the class claims. They have no conflict with class members in the maintenance of this action, and their interests in this action are antagonistic to Defendants' interests.

54.  Plaintiffs' interests are coincident with, and not antagonistic to, absent class members' interest because by proving their individual claims they will necessarily prove Defendant' liability as to the Class' claims.

55. Plaintiffs also are cognizant of and determined to faithfully discharge their fiduciary duties to the absent class members as the Class Representative. They will vigorously pursue the class claims. They are aware that they cannot settle this action without Court approval. Representative Plaintiffs have and/or can acquire the financial resources to litigate this action. Moreover, undersigned counsel have agreed to pay all reasonable costs to litigate this action.

56. Undersigned counsel, Malakoff Doyle & Finberg, P.C., and other counsel, are experienced in litigating class actions and have handled many such actions in the state and federal courts for and on behalf of other policyholders. Counsel are handling this case on a contingent basis and will receive compensation for their professional services only as awarded by this Court.

**Superiority**

57. A class action provides for a fair and efficient method of adjudicating this controversy. The substantive claims of the Representative Plaintiffs and the class members will require evidentiary proof of the same kind and application of the same law, since Defendants have treated all class members in a similar and/or identical manner. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation effectively makes it impossible for individual Class Members to seek redress for the wrongs complained of herein.

**Manageability**

58. There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions, and because damages may be calculated with mathematical precision, the cost of administering the class fund will be minimized. Because Class Members may be unaware that their rights have been violated, or, if aware, would be

unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding.

## STATEMENT OF THE CLAIMS

### COUNT I

**[Willful Violation of FCRA]**

**Violation of 15 U.S.C. § 1681 g(a)(1)**
**(Failure To Disclose The Date Of Delinquency)**

59. The foregoing paragraphs are incorporated as though fully set forth at length herein.

60. Equifax willfully failed to comply with the requirements imposed under the FCRA by refusing to provide to Plaintiffs and the members of the class all information in the consumers' files at the time they requested it.

61. Equifax willfully fails to comply with 15 U.S.C. § 1681g(a)(1) by failing to clearly and accurately disclose the date of delinquency to members of the defined class whose credit accounts have been reported by Equifax as placed for collection, charged to profit or loss or subject to similar action.

62. Wherefore, it is respectfully submitted that the court find that Equifax willfully violated 15 U.S.C. § 1681g(a)(1).

63. Plaintiffs have been injured by reason of these violations of the FCRA because they exercised their statutory rights under the Act to obtain their complete files, but instead Equifax failed to disclose their complete files.

## COUNT II

**[Willful Violation of FCRA]**

Violation of 15 U.S.C. § 1681 e(a)

(Failure To Establish and Maintain Reasonable Procedures
To Avoid Violations of 15 U.S.C. § 1681c(a)(4))

64.   The foregoing paragraphs are incorporated as though fully set forth at length herein.

65.   Equifax willfully failed to comply with the requirements imposed under the FCRA by failing to establish or maintain a reasonable procedure designed to record, maintain and clearly and accurately disclose the date of delinquency to consumers pursuant to the disclosure provisions of 15 U.S.C. § 1681g with respect to consumers with accounts placed for collection or charged to profit or loss in violation of 15 U.S.C. § 1681e(a).

66.   Equifax willfully failed to establish procedures designed to avoid reporting of obsolete information provided by Sherman.

67.   Thus, Equifax willfully violated 15 U.S.C. § 1681e(a).

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that judgment be granted in their favor, finding that Equifax has wilfully failed to comply with 15 U.S.C. § 1681g(a) by failing to provide all information in the consumers' files at the time of the request, that Equifax has willfully failed to establish reasonable procedures in violation of 15 U.S.C. § 1681e(a), and that the judgment provide for the following relief pursuant to 15 U.S.C. § 1681n(a):

- statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

- the costs of the action together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

- such other relief as this Court deems just and proper.

A JURY TRIAL IS REQUESTED.

Respectfully submitted,

MALAKOFF DOYLE & FINBERG, P.C.

/s/ *James M. Pietz*
_____
James M. Pietz (IL Id. # 6197586)
200 Frick Building
Pittsburgh, PA 15219
(412) 281-8400 - phone
(412) 281-3262 - fax
jpietz@mdfpc.com - e-mail

O. Randolph Bragg (Local Counsel)
IL Id # 6221983
Horwitz, Horwitz & Associates
25 E. Washington Street, Suite 900
Chicago, IL 60602
(312) 372-8822 - phone
312-372-1673 - fax
rand@horwitzlaw.com - e-mail

Attorneys for the Representative Plaintiffs,
Heather Gillespie and Angela Cinson and
the Class They Represent