IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HEATHER GILLESPIE and ANGELA CINSON, individually and on behalf of all similarly situated individuals, ) ) ) ) Plaintiffs, ) ) vs. ) EQUIFAX INFORMATION SERVICES, LLC, ) ) Defendant. ) | Case No. 05 C 138 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Heather Gillespie and Angela Cinson have sued Equifax Information Services, LLC (Equifax) on behalf of themselves and all others similarly situated. Plaintiffs allege in their fourth amended complaint that Equifax violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681g(a)(1), by failing to disclose clearly and accurately all the information in the consumer files of persons with reported delinquent credit accounts. This case is before the Court on Equifax's motion for summary judgment based on the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007). For the following reasons, the Court denies Defendant's motion.

## Background

Because Equifax has moved for summary judgment, the Court views the facts in the light most favorable to plaintiffs and draws reasonable inferences in their favor. *See Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

1

Equifax is a consumer reporting agency (CRA) that gathers positive and negative consumer credit information from outside creditors and sells it to businesses in connection with credit transactions. Since at least 1995, Equifax has been a member of the Consumer Data Industry Association (CDIA) or its predecessor, the Associated Credit Bureaus (ACB). Equifax's reporting and collection practices are regulated by the FCRA, which Congress amended in 1996, although the amendments did not take effect until 1997. The amendments specified that the seven-year period during which information about a consumer's delinquent account may be disclosed to businesses must begin six months after "the date of commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

After the amendments, the ACB created a standardized data reporting format called the Metro 2 format. Pl. Add'l Facts ¶ 16. Field 25 of the Metro 2 format is labeled "FCRA/Date of First Delinquency." *Id.* ¶ 21. An entity that notifies Equifax (or any other CRA) of a delinquent account must provide, within ninety days, the date of first delinquency on the account, which is "the month and year of the commencement of the delinquency on the account that immediately preceded the action." 15 U.S.C. § 1681s-2(a)(5)(A). Equifax stores this date internally in a field in a consumer's credit file labeled "DFD/DLA", with "DFD" referring to the "Date of First Delinquency." Pl. Add'l Facts ¶¶ 22-23 & Ex. 14A.

In disclosing information to a consumer who requests it, however, Equifax does not identify, as such, the "Date of First Delinquency" or "DFD." Rather, it uses the term "Date of Last Activity." *Id.* ¶ 11. Specifically, when a consumer requests disclosure of a

2

file that contains a "Date of First Delinquency" in Equifax's internal database, Equifax transfers the information from that field onto a field in the disclosure form entitled "Date of Last Activity." *Id.* ¶ 27. Equifax provides credit grantors with this information in the same format, that is, in a field entitled "DLA" or "Date of Last Activity." Def. LR 56.1 St. ¶ 26. The "Date of Last Activity" terminology is the same terminology that Equifax used in disclosing information to consumers prior to the 1996 amendments to the FCRA. Pl. Add'l Facts ¶ 15. It continued to use that term even after the amendments; it did not modify the format of the files it discloses to consumers to include a field labeled "Date of Delinquency," "Date of First Delinquency", "FCRA/Date of First Delinquency," or that otherwise mentioned delinquency or anything like it. *Id.* ¶ 8.

Both Cinson and Gillespie opened and, later, defaulted on credit accounts, Cinson on a Sears account and Gillespie on a Direct Merchants Bank account. Cinson's Sears account became delinquent in late 1996 or early 1997. Although Sears "charged-off" the debt in late 1997, it treated the delinquency as cured after Cinson made payments on the account in 1998.[1] When Cinson's account fell into delinquency for a second time, Sears sold it to Sherman Acquisitions Company (Sherman), a collection agency. On January 7, 2004, Equifax sent Cinson the contents of her credit file at her request. The file listed the "Date of Last Activity" on the Sears and Sherman accounts as October 1998. Pl. Ex. 24 at 3, 6. The field marked "Date Maj. Del 1st Rptd" was blank for both the Sears account and the Sherman account. *Id.*

Direct Merchants sold Gillespie's account to Sherman after it became delinquent in 2001. On December 2, 2004, at Gillespie's request, Equifax sent Gillespie the

---

[1] A creditor "charges-off" a debt when it "treats the debt as a loss or or expense because payment is unlikely." *See* Black's Law Dictionary 227 (7th ed. 1999).

contents of her credit file. The file she received listed the "Date of Last Activity" on the Direct Merchants account as July 2001 and on the Sherman account as September 2001. Pl. Ex. 23 at 4, 6. As was the case in Cinson's file, the field marked "Date Maj. Del 1st Rptd" in Gillespie's file contained no entry for either account. *Id.*

With each file, Equifax included an explanatory insert entitled "Facts You Should Know," which states,

> Payment history on your credit file is supplied by credit grantors with whom you have credit. This includes both open accounts and accounts that have already been closed. Payment in full does not move your payment history. The length of time information remains in your credit file is shown below:
>
> Collection Accounts:   Remain for 7 years
>
> Credit Accounts:   Accounts paid as agreed remain for up to 10 years. Accounts not paid as agreed remain for 7 years.
>
> (The time periods listed above are measured from the date in your credit file shown in the "date of last activity" field accompanying the particular credit or collection account.)

Pl. Ex. 23 at 11. Equifax did not provide, however, any explanation of what the "Date of Last Activity" field signified. Specifically, it gave no indication whether, or to what extent, the "last activity" in an account had anything to do with the date an account became delinquent.

**Procedural history and applicable law**

Plaintiffs filed their fourth amended complaint against Equifax on October 3, 2005, alleging that Equifax violated (1) section 1681e(a) of the FCRA by failing to "maintain reasonable procedures" to avoid disclosures of obsolete credit information and (2) section 1681g(a)(1) of the FCRA by failing to clearly and accurately disclose dates of first delinquencies in their credit files. Plaintiffs contend that as a result of

4

Equifax's inadequate disclosures, Equifax was able to continue reporting obsolete information in their files beyond the permissible statutory period. Plaintiffs seek costs, fees, and statutory and punitive damages pursuant to 15 U.S.C. § 1681n(a), a provision of the FCRA requiring a showing of willfulness. *See id.* § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . .").

Section 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: All information in the consumer's file at the time of the request." *Id.* § 1681g(a)(1). The Seventh Circuit has held that "file" means the information included in the consumer report produced by a CRA to businesses. *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007).

Section 1681c(a)(4) prohibits CRAs from releasing consumer reports containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The seven-year period begins to run 180 days after the beginning of the delinquency immediately preceding the collection, charge-off, or similar action. *Id.* § 1681c(c)(1). A consumer may contest the completeness and accuracy of the CRA's information through a dispute resolution process. *Id.* § 1681i.

Plaintiffs contend that in consumer disclosures, Equifax's use of the "Date of Last Activity" field rather than a field entitled "Date of First Delinquency" or something similar violated section 1681g(a)(1)'s requirement to "clearly and accurately disclose . . . all information" in the consumer's files. They further assert that this practice prevented

5

consumers from being able to figure out whether information in their files was outdated.

In March 2006, the Court granted summary judgment for Equifax on both of plaintiffs' claims. *Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2006 WL 681059 (N.D. Ill. Mar. 9, 2006). With regard to plaintiffs' second claim, regarding FCRA's "clearly and accurately" requirement, the Court determined that section 1681g(a)(1) "only requires CRAs to clearly and accurately disclose all of the information contained in a consumer's file and does not require, in addition, that every bit of information in the file be accurate." *Id.* at *3. In response to plaintiffs' argument that the "date of last activity" field was not clear because it could refer to a number of different dates, the Court stated that plaintiffs had not offered any evidence supporting their argument that they could not calculate their purge date from the listed "date of last activity." *Id.* Concluding that whether or not Equifax accurately denoted the true date of delinquency in the "date of last activity" field was immaterial because plaintiffs could dispute any inaccurate information, the Court held that "no jury reasonably could find that Equifax violated § 1681g(a)(1)." *Id.* at *3-4.

Plaintiffs appealed the Court's grant of summary judgment for Equifax on the "clearly and accurately" claim under section 1681g(a)(1); they did not appeal the grant of summary judgment on their "reasonable procedures" claim. In May 2007, the Seventh Circuit reversed and remanded the case for further proceedings, including determination of plaintiffs' motion for class certification. *See Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 942 (7th Cir. 2007).

In its decision, the Seventh Circuit expressed concern that Equifax's apparent use of the "Date of Last Activity" field for both the date of first delinquency (in the case

6

of delinquent accounts) and the most recent payment (in the case of accounts paid as agreed) could "cause significant confusion and uncertainty for the consumer." *Id.* The court was also troubled by the possibility that this practice might allow Equifax to advance the "Date of Last Activity" on a delinquent account following a belated payment by a consumer while simultaneously leaving the negative history on file, thus enabling Equifax to retain the negative information for longer than the permitted statutory period. *Id.*

In determining whether Equifax's practice violated the terms of section 1681g(a)(1), the court gave the words "clearly" and "accurately" their plain meaning and construed them "in the context of the entire statutory scheme." *Id.* at 941. The court observed that a "primary purpose[] of the statutory scheme provided by the disclosure in § 1681g(a)(1) is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under § 1681i." *Id.* To fulfill this purpose, the court stated, "[t]he disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information." *Id.* "An accurate disclosure of unclear information defeats the consumer's ability to review the credit file." *Id.* Thus, the court held, Equifax's method of disclosure "may be accurate but it is not necessarily clear." *Id.* The lack of clarity, the court determined, arose from the unspecified nature of the information encompassed in the "Date of Last Activity" field. *Id.* at 942.

Following remand, Equifax moved again for summary judgment, this time based on the Supreme Court's June 4, 2007 decision in *Safeco*. Plaintiffs, for their part, renewed their motion for class certification. In this decision, the Court addresses only

7

Equifax's motion for summary judgment.

**Equifax's motion**

Together with its motion, Equifax has provided evidence that, contrary to the Seventh Circuit's belief, it does not use the "Date of Last Activity" field for any purpose other than to disclose the date from which the consumer's purge date is calculated. Equifax further states that the purge date for a particular account is, in fact, determined by the date of first delinquency that led to the account being sent for collection or charged off. Equifax represents that later activity on an account, such as a late payment, does not alter the date disclosed in the "Date of Last Activity" field. Equifax states that to determine whether it is accurately reporting the date from which an account will be purged, a consumer "only needs to follow two steps: (1) add seven years to the date shown in the "Date of Last Activity" field and (2) compare the resulting date to the purge date indicated by her personal records." Affid. of Warren Edwards ¶ 18.

Equifax's summary judgment submission does not, however, identify any way a consumer might figure out what the term "Date of Last Activity" signifies. Nor has Equifax provided any information regarding why it uses that phraseology as opposed to a disclosure referencing the term "delinquency." Among other things, Equifax has provided no information indicating why it adopted the "Date of Last Activity" terminology in the first place, why it did not change its disclosure format after the 1996 FCRA amendments, or why it believes that terminology complies with FCRA's disclosure requirements.

**Discussion**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Because plaintiffs seek damages under section 1681n(a), they must prove not only that Equifax violated section 1681g(1)(a), but also that its violation was willful. *See Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 725 (7th Cir. 2008). A reasonable jury could find that Equifax's use of the "Date of Last Activity" field in its disclosures to consumers runs afoul of the statutory requirement that a consumer reporting agency "clearly and accurately" disclose information in the consumer's file. Without some definition, which Equifax nowhere provides to consumers, the terminology is anything but "clear." A jury could so find based on Equifax's current submission: Equifax says, in effect, that despite the field's title, it does not actually disclose the date of last *activity*; rather, it discloses the date of last *delinquency*. The arguably erroneous description, combined with Equifax's direction to consumers to use the "last activity" date to determine the purge date for a delinquent account, easily could

9

leave a consumer befuddled as to whether the purge date is accurate.

Equifax argues, however, that in light of the standard the Supreme Court set in *Safeco* for proof of willfulness, it is entitled to summary judgment even if its disclosure did not comply with the requirements of section 1681g(a)(1). Under *Safeco*, the willfulness requirement of section 1681n(a) encompasses both reckless and knowing violations of the FCRA.[2] *Safeco*, 127 S. Ct. at 2208. Reckless is defined via an objective standard, "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 2215 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). Under this standard, a company subject to FCRA acts in reckless disregard to the statute only if its action is a violation under a reasonable reading of the statute's terms and the company's action "shows that [it] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.*

In *Safeco*, the Supreme Court concluded that the defendant's violation of a different provision of the FCRA "was not objectively unreasonable." *Id.* It based this conclusion on its determination that the defendant's reading of the statute had "a

---

[2] The plaintiffs in *Safeco* alleged violations of section 1681a(k)(1)(B)(I) of the FCRA, which requires that consumers receive an adverse action notice whenever a credit report results in "an increase in any charge for . . . any insurance, existing or applied for." 15 U.S.C. § 1681a(k)(1)(B)(I). Their claims were based on initial rates the defendants charged them for new insurance policies—rates that the defendants contended the statute could not reach because, they argued, it was impossible to "increase" charges to customers with whom they had no prior dealings. *Id.* at 2211. The Court disagreed and read the statute to reach "initial rates for new applicants" that were higher than they would have been but for their credit reports. *Id.* at 2212. Still, in part because it conceded that Safeco's interpretation of "increase" had "a foundation in the statutory text," the Court did not find Safeco's reading "objectively unreasonable." *Id.* at 2215.

foundation in the statutory text"; there were prior appellate-level interpretations of the statutory provision; and there was a "dearth of [regulatory] guidance" regarding "the less-than-pellucid statutory text." *Id.* at 2216.

Equifax argues that these same considerations exist in the present case, making its purported interpretation of section 1681g(a)(1) objectively reasonable and undercutting plaintiffs' willfulness claim. It is true, as Equifax notes, that this Court previously ruled in its favor in this case. But it is difficult to see how this helps Equifax: the Court's ruling was demonstrably incorrect – it was reversed on appeal, in resounding fashion. And this is not a case, perhaps unlike some others, in which there were prior unreviewed trial-level decisions that approved a particular practice.

It is also true, as Equifax notes, that there were no prior appellate-level decisions construing section 1681g(a)(1) in the context at issue here. The key factor distinguishing this case from *Safeco*, however, is that the statutory provision at issue here cannot be called "less-than-pellucid," *Safeco*, 127 S. Ct. at 2216, or anything close to it. The Seventh Circuit ruled that the requirement that a file's contents be disclosed "clearly and accurately" has a readily ascertainable meaning, namely the plain meaning of the statutory language. The court went on to conclude that Equifax's disclosure could not be called "clear" as a matter of law because a reasonable fact-finder could determine that it was not understandable to the average consumer. It would be difficult to call the court's rationale at all novel or ground-breaking; in plain English, the term "clear" is effectively synonymous with "understandable" when used in this context.

Equifax contends that it provided customers with a "clear" disclosure of how to calculate the date on which collection accounts would be purged from their files. It also

11

points out that the Seventh Circuit's concern that the "Date of Last Activity" field could be used for multiple purposes or updated in the event of a late payment is misplaced. It appears Equifax is right about that; the "Date of Last Activity" field in fact lists the date of delinquency. But Equifax's focus on the fact that it has made a clear disclosure of how to calculate the purge date based on the "Date of Last Activity" misses the point. What plaintiffs contend is unclear is not the instruction on how to determine the purge date, but rather the fact that Equifax does not define the "Date of Last Activity." Equifax itself concedes that "[t]he term 'Date of Last Activity' is not a term that is used or that is standardized within the credit reporting industry." Def. Resp. to Pl. Add'l Facts ¶ 34. There is a good chance that an average consumer would understand the "Date of Last Activity" to signify the last date something actually happened on the account, not necessarily the date on which the creditor first considered the account delinquent. The Court cannot conclude that an interpretation of the requirement of clear disclosure that allows use of an arguably obscure and concededly non-standard term to signify something other than what it says can be considered to be, as a matter of law, an objectively reasonable interpretation of a non-ambiguous statutory term.

Though this, by itself, is sufficient to deny Equifax's motion, the Court notes that there is another problem with Equifax's attempt to analogize this case to *Safeco* and others holding a company's interpretation of a less-than-clear FCRA provision to be objectively reasonable. The argument assumes that Equifax actually adopted a particular construction of section 1681g(a)(1). No such evidence appears in the record in this case; Equifax has elected not to offer evidence regarding why it makes disclosures in the particular format at issue, or why it did not change its existing practice

after the 1996 FCRA amendments or the ACB's adoption of the Metro 2 standardized data reporting format. Based on the record as it now stands, a reasonable inference can be drawn that Equifax was willfully blind to the FCRA's disclosure requirements and ran a more-than-careless risk that its adherence to its earlier reporting format was non-compliant.[3]

The Court also notes that unlike in *Safeco*, Equifax hardly faced a "dearth of guidance" from other sources. *See Safeco*, 127 S. Ct. at 2216. Several FTC Staff Opinion Letters that plaintiffs have submitted emphasize that the date of first delinquency is the proper anchor date for calculating the seven-year statutory period during which it is permissible to report a delinquent account. *See* Pl. Exs. 8-10. The letters also make clear how to determine what day constitutes the date of first delinquency. *See, e.g.*, Pl. Ex. 8 at 2 (stating that the 180-day period begins on the date when the consumer's payment is first missed). Though the FTC Staff Opinion Letters do not address the format in which CRAs should disclose delinquency dates to consumers, guidance in that regard was available in the Senate Report accompanying the 1996 amendments to the FCRA and the 2000 ACB publication "How to Comply With the Fair Credit Reporting Act." Together these reports "specifically explain that the 'date of delinquency' is intended to be a very specific, date certain that is not 'in the

---
[3] Equifax also argues that it would be unfair to penalize it for providing information about the date of first delinquency in the form it used when other CRAs, such as Trans Union, need not disclose that information at all because they do not retain it in their files. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 910 (7th Cir. 2007) (holding that because Trans Union does not retain dates of first delinquency in its internal files, it need not disclose them to consumers). The Court rejects this argument. It may be the case that Trans Union's practice of not including consumers' dates of first delinquency fails to serve the interests of consumers seeking to verify the accuracy of their credit records. But as Congress wrote section 1681a(g), the disclosure requirement is tied to what the CRA includes in credit reports issued to third parties. *Id.*

control of the creditor.'" Pl. Resp. at 15; Pl. Exs. 3, 7. The relevant section of the Senate Report reads as follows:

> To ensure that consumers understand their reports once they receive them, this section provides that the consumer reporting agencies must, within 90 days of enactment, develop a form which shall maximize the comprehensibility and standardization of such disclosures. The Committee does not intend the maximization standard to be interpreted as a perfection standard. However, the Committee expects that report information will be provided *in a form that can be understood by the average consumer*.

Pl. Ex. 3; S. Rep. No. 104-185, at 42-43 (1995) (emphasis added). Additionally, the ACB publication states that the Metro 2 format, which the ACB developed in accordance with the Senate Report's mandate, "requires the reporting of [delinquency] information in the FCRA/compliance Date of First Delinquency Field." *See* Pl. Ex. 7 at 23-6.

In sum, unlike in *Safeco* and other cases in which courts have held the willfulness requirement was not met, Equifax had guidance from regulatory and industry sources that pointed away from the disclosure format that–by choice or inertia–it used. And the statutory term's plain meaning put Equifax on notice that it must disclose consumer information—including the important date of first delinquency—in a form that can be understood by the average consumer.

For these reasons, Equifax has failed to establish as a matter of law that its interpretation of the statute was objectively reasonable or, more broadly, that it did not violate the statute recklessly or knowingly.

## Conclusion

For the foregoing reasons, the Court denies Equifax's motion for summary judgment [docket no. 120]. The parties are directed to appear for a status on

14

September 24, 2008 at 9:30 a.m. for the purpose of advising the Court whether any further submissions are necessary before the Court rules on plaintiffs' motion for class certification and setting a schedule for the remainder of the case.

_____
MATTHEW F. KENNELLY
Date: September 15, 2008United States District Judge