**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HEATHER GILLESPIE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 05 C 138** |
| | ) | |
| **EQUIFAX INFORMATION SERVICES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Heather Gillespie and Angela Cinson have sued Equifax Information Services, LLC (Equifax) on behalf of themselves and all others similarly situated. Plaintiffs allege that Equifax violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681g(a)(1), by failing to disclose clearly and accurately the date of first delinquency in the consumer files of persons with reported delinquent credit accounts. The Seventh Circuit remanded the case to this Court after concluding that the Court had erroneously granted summary judgment in Equifax's favor. *See Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 942 (7th Cir. 2007). Following remand, Equifax filed a renewed motion for summary judgment, which the Court denied. *See Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008).

In this decision, the Court considers plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23(b)(3). The Court grants plaintiffs' motion for the reasons stated below.

**Background**

The Court presumes familiarity with the facts of the case and will restate them only briefly here.  Equifax is a credit reporting agency (CRA) that gathers consumer credit information from creditors and sells it to businesses in connection with credit transactions.  The FCRA, which Congress amended in 1996, regulates the reporting and collection practices of CRAs.  Section 1681g(a)(1) provides that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer:  All information in the consumer's file at the time of the request."   15 U.S.C. § 1681g(a)(1).

 Section 1681c(a)(4) prohibits CRAs from making consumer reports containing "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years."  15 U.S.C. § 1681c(a)(4).  Under the 1996 amendments to the FCRA, which took effect in 1997, the seven-year period begins to run 180 days after the beginning of the delinquency immediately preceding the collection, charge-off, or similar action.  *Id.* § 1681c(c)(1).  A consumer may contest the completeness and accuracy of the CRA's information through a dispute resolution process.  *Id.* § 1681i.

An entity that notifies Equifax (or any other CRA) of a delinquent account must provide, within ninety days, the date of first delinquency on the account.  *See id.* § 1681s-2(a)(5)(A).  Equifax stores this date internally in a field labeled "DFD/DLA", with "DFD" referring to the "Date of First Delinquency."  *Gillespie*, 2008 WL 4316950, at *1. When it discloses a file to a consumer, however, Equifax labels the field containing the date of first delinquency "Date of Last Activity"—not "Date of First Delinquency" or

2

"DFD." *Id.*

Both Cinson and Gillespie opened and, later, defaulted on credit accounts, Cinson on a Sears account and Gillespie on a Direct Merchants Bank account. Their delinquent accounts were each sold to Sherman Acquisitions Company, a collection agency. In 2004, Cinson and Gillespie requested the contents of their credit files from Equifax. Although a date appeared in the field marked "Date of Last Activity" in each of their files for the original (Sears or Direct Merchants) accounts and the Sherman accounts, the field marked "Date Maj. Del. 1st Rptd" remained blank.

With each file, Equifax included an explanatory insert entitled "Facts You Should Know," which states, in part,

The length of time information remains in your credit file is shown below:

| | |
|---|---|
| Collection Accounts: | Remain for 7 years |
| Credit Accounts: | Accounts paid as agreed remain for up to 10 years. Accounts not paid as agreed remain for 7 years. |

(The time periods listed above are measured from the date in your credit file shown in the "date of last activity'' field accompanying the particular credit or collection account.)

*Id.* at *2. The explanatory insert gave no indication whether, or to what extent, the "date of last activity" had anything to do with the date an account became delinquent.

In the current version of their complaint (the fourth amended complaint), plaintiffs allege that Equifax violated the FCRA. Specifically, they contend that Equifax's use of the "Date of Last Activity" field in consumer disclosures violated the requirement of 15 U.S.C. § 1681g(a)(1) to "clearly and accurately disclose . . . all information" in the consumer's files. Plaintiffs seek costs, fees, and statutory and punitive damages

3

pursuant to a provision of the FCRA requiring a showing of willfulness. *See id.* § 1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . .").

In March 2006, the Court granted summary judgment for Equifax, concluding that it was immaterial whether Equifax accurately denoted the true date of delinquency in the "date of last activity" field because plaintiffs could dispute any inaccurate information. *Gillespie v. Equifax Info. Servs., LLC*, No. 05 C 138, 2006 WL 681059, at *3 (N.D. Ill. Mar. 9, 2006).

In May 2007, the Seventh Circuit reversed and remanded the case for further proceedings, including determination of plaintiffs' motion for class certification. *See Gillespie*, 484 F.3d at 942. In its decision, the court expressed concern that Equifax's use of the "Date of Last Activity" field for both delinquent and paid-as-agreed accounts could "cause significant confusion and uncertainty for the consumer." *Id.* The unspecified nature of the information disclosed in the "Date of Last Activity" field led the court to hold that Equifax's disclosure method "may be accurate but is not necessarily clear." *Id.* at 941-42. To fulfill the purpose of the statutory scheme—allowing consumers to identify and dispute inaccurate information in their credit files—the court stated, "[t]he disclosure must be made in a manner sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information." *Id.* at 942.

Following remand, plaintiffs renewed their motion for class certification and Equifax moved again for summary judgment, this time based on the Supreme Court's

4

June 4, 2007 decision in *Safeco Ins. Co. of Am. v. Burr*, — U.S. —, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). Equifax argued that its interpretation of "clearly and accurately" as allowing use of a "Date of Last Activity" field to display dates of first delinquency was objectively reasonable and that it therefore could not have willfully violated the provision. On September 15, 2008, the Court denied Equifax's motion, holding that "[a] reasonable jury could find that Equifax's use of the 'Date of Last Activity' field in its disclosures to consumers runs afoul of the statutory requirement that a consumer reporting agency 'clearly and accurately' disclose information in the consumer's file." *Gillespie*, 2008 WL 4316950 at *5. The Court could not conclude on summary judgment that the use of the term "Date of Last Activity" to denote the date of first delinquency was "an objectively reasonable interpretation of a non-ambiguous statutory term" foreclosing liability under *Safeco*. *Id.* at * 6.

## Discussion

Plaintiffs seek to certify a class consisting of all persons who: 1) have a New Jersey or North Carolina address or email address, or an email address elsewhere, in their Equifax file; 2) have a Sherman collection account or delinquent account in their name in their file record; and 3) requested a file disclosure between January 10, 2003 and the present.

To prevail on a motion for class certification, a plaintiff must satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the subsections of Rule 23(b). The four threshold requirements of Rule 23(a) are numerosity (the class must be so large that "joinder of all members is impracticable");

5

commonality (there must be common questions of law or fact); typicality (the representatives' claims must be "typical" of those of the class); and adequacy of representation (the representatives must fairly and adequately protect the interests of the class). Fed. R. Civ. P. 23(a)(1)-(4); *see Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any question affecting only individual members," and that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Having moved to certify the class, plaintiffs bear "the burden of demonstrating that [class] certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

### 1.    Rule 23(a) requirements

#### a.    Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Fed. R. Civ. P. 23(a)(1). Although a court cannot rely on pure speculation regarding class size, plaintiffs need not "specify the exact number of persons in the class." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Equifax "dispute[s] the validity of plaintiff's proposed class definition," Def. Resp. at 12 n.15, but does not dispute that the proposed class, as plaintiffs define it, satisfies the numerosity requirement. It concedes that potential class members from New Jersey

and North Carolina alone "could be in excess of 270,000." *Id.* at 19. The Court is satisfied that joinder would be impracticable in this case given the number of class members involved; the proposed class satisfies Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele*, 149 F.3d at 594. A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." *Id.*

Plaintiffs allege that the form of Equifax's standard file disclosures to class members, all of whom had delinquent Sherman accounts, violated the FCRA. Equifax's uniform use of the "Date of Last Activity" field to convey dates of first delinquency constitutes a common nucleus of operative fact giving rise to the class claims. The proposed class thus satisfies the commonality requirement of Rule 23(a)(2).

### c. Typicality

The typicality requirement of Rule 23(a)(3), which is closely related to the commonality requirement of Rule 23(a)(2), is met if the class representatives' claims are typical of those of the class. The named plaintiffs' claims are typical if they "[arise] from the same event or course of conduct that gives rise to the claims of other class members and [their] claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citations and internal quotation omitted). The claims of the named plaintiffs must have "the same essential

characteristics" as the claims of the proposed class. *Retired Chicago Police Ass'n*, 7 F.3d at 597.

Equifax argues that the named plaintiffs' claims are not typical of the those of the class because proof that Equifax's failure to clearly and accurately disclose everything in their files interfered with their right to dispute inaccuracies would not prove the claims of the rest of the class. But as plaintiffs note, Gillespie's and Cinson's claims arise from precisely the same standardized practice as the claims of the rest of the class members: Equifax's use of a field marked "Date of Last Activity" to disclose a consumer's date of first delinquency. The named plaintiffs' claims are also based on the same legal theory as those of the rest of the class: that Equifax's file disclosure practice violated the FCRA's mandate to disclose all the information in a consumer's file "clearly and accurately."

Equifax argues that it has a defense unique to the named plaintiffs' claims: each of them lodged a dispute with Equifax regarding their Sherman accounts. But whether a consumer disputed information contained in her credit file has nothing to do with whether Equifax willfully violated section 1681g(a)(1) in the way it disclosed information. In short, this purported unique issue does not undermine typicality in the least.

For these reasons, the Court concludes that the named plaintiffs' claims are typical of those of the class as required by Rule 23(a)(3).

### d. Adequacy of representation

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class as a whole. *See* Fed. R. Civ. P. 23(a)(4). The Court evaluates whether plaintiffs have fulfilled this criterion by looking at both "'the adequacy of the named

plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (citing *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). A named plaintiff is ordinarily considered to be adequate so long as her claims neither conflict with nor are antagonistic to those of other class members. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Equifax does not challenge plaintiffs' contention that their lawyers are adequate to serve as class counsel because they have substantial class action experience and have handled many such cases in the Seventh Circuit and elsewhere. The Court has no doubt that plaintiffs' counsel will be able to litigate the case fairly and adequately on behalf of the proposed class.

Equifax argues, however, that Gillespie and Cinson are inadequate class representatives because they have "disclaimed and abandoned the other, more substantial claims that proposed class members might have," including other claims of inaccurate information contained in a particular consumer's report; claims for actual and compensatory damages arising out of obsolete derogatory information; New Jersey state statutory claims; and other state common-law claims. *See* Def. Resp. at 15.

The Seventh Circuit has squarely rejected this line of attack, concluding that finding class certification inappropriate based on the assertion that a plaintiff "should have sought compensatory damages for herself and all class members rather than relying on the statutory-damages remedy . . . would make consumer class actions impossible." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006)**.** In

9

fact, the court continued, "refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class treatment infeasible would throw away the benefits of consolidated treatment." *Id.* at 953. The court similarly discredited the idea that a representative plaintiff's failure to bring state law claims should doom class certification, observing that "[r]eliance on federal law avoids the complications that can plague multi-state classes under state law." *Id.* Indeed, Equifax itself acknowledges that adding state-law claims to this suit "would have presented the same kind of choice-of-law difficulties that have defeated other proposed multi-state class actions." Def. Resp. at 15.

As in *Murray*, this is not a case where "all or almost all of the claims are likely to be large enough to justify individual litigation." *Id.* As a result, Gillespie and Cinson's strategic decisions about what claims to bring against Equifax do not render them inadequate class representatives. To the contrary, their choice to seek statutory damages is entirely reasonable in light of the difficulties inherent in tracing and proving the actual harm caused by Equifax's alleged statutory violations, such as the credit card and automobile loan problems Gillespie mentioned in her interrogatory response. Of course, should the injuries of a few class members "prove to be substantial, they may opt out and litigate independently."[1] *Id.* The Court will insist that notice to the class

---

[1] Equifax cites a decision by a district judge in Minnesota for the proposition that the principles set forth in *Murray* do not apply when plaintiffs fail to "carry their burden of demonstrating that their losses were small." Def. Supp. Resp. at 2 (citing *Gardner v. Equifax Info Servs.*, No. 06-3102, 2007 WL 2261688 (D. Minn. Aug. 6, 2007)). The court in that case specifically noted, however, that *Murray* was not binding on it – which, by contrast, it is in this Circuit. *Id.* at *5. Equifax is, in effect, trying to reverse the burden set out in *Murray* when the Seventh Circuit stated that "[u]nless a district court finds that personal injuries are large in relation to statutory damages, a representative

(continued...)

members clearly describes their entitlement to bring individual actions seeking actual damages, as well as the pros and cons of remaining in the class in light of the named plaintiffs' decision to forego claims based on actual damages.

In sum, because Gillespie and Cinson's claims neither conflict with nor are antagonistic to the claims of other class members, the Court finds that they have established their adequacy as class representatives.

### 2.      Rule 23(b)(3) Requirements

Plaintiffs seek certification under Rule 23(b)(3).  They contend that questions of law or fact common to the members of the class predominate over questions affecting only individual members, and that a class action is superior to other methods of adjudicating the class's claims.

### a.      Predominance

Common questions predominate when the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The predominance criterion of 23(b)(3) is "far more demanding" than Rule 23(a)(2) commonality, though the two inquiries are related. *Id.* at 623-24.  However, "[w]hen a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation." *Young v. County of Cook*, No. 06 C 552, 2007 WL 1238920, *7 (N.D. Ill. Apr. 25, 2007).  That is the case here; plaintiffs

---

[1](...continued)
plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification." *Murray*, 434 F.3d at 953.  Nothing in the case has provided any basis to believe that any significant number of class members are likely to have suffered actual losses exceeding the $1,000 per person statutory award authorized by section 1681n.

challenge the standardized manner in which Equifax disclosed certain information to consumers.

Equifax contends that individual questions predominate over common questions because, in its view, class members will have to advance individualized proof concerning several issues. For example, Equifax argues, each class member will have to prove that she requested a copy of her credit file; Equifax complied with that request; and the date of delinquency was inaccurately disclosed. Equifax asserts that each class member also will have to submit proof regarding whether she ever challenged Equifax's reporting of obsolete information, whether she suffered an injury in fact, and whether her claim is barred by the doctrine of claim preclusion, or *res judicata*.

None of these contentions suggests that individual issues will predominate over issues common to the class. It is overwhelmingly likely that whether a particular class member requested a copy of her file and whether Equifax complied with that request can be determined easily from Equifax's own records; the point is unlikely to take up any significant time or effort in the litigation of the case. Whether the date of delinquency was "clearly and accurately" disclosed is undeniably a common question; Equifax employed a uniform procedure for the disclosures at issue. It is entirely immaterial whether any particular class member filed a dispute after receiving her file disclosure or whether she suffered an actual injury (given plaintiffs' reliance on statutory rather than actual damages). And as plaintiffs note, if the theoretical possibility that some class members' claims are barred because of the doctrine of claim preclusion indicated that individual issues will predominate over common issues, class certification would be a very rare event indeed. In any event, the number of class members likely to

12

have litigated a suit that would give rise to a straight-faced claim preclusion argument is almost certainly exceedingly small, and their identities are likely readily obtainable from Equifax's records.

Equifax also argues that individualized proof of willfulness will be required and will predominate over common questions. But willfulness will not turn, as Equifax asserts, on whether class members can show that Equifax deliberately tried to harm them in particular. Rather, it turns on whether Equifax knowingly or recklessly disregarded its statutory obligations under FCRA. *See Safeco*, — U.S. at —, 127 S. Ct. at 2208-09. That is plainly a common issue in this case, not an individual one, as it concerns a standardized practice that Equifax used. In short, willfulness is perfectly suitable for class-wide proof in this case.

Nor do individual issues predominate, as Equifax contends, on questions of clarity and accuracy of its disclosures. The number of credit accounts a consumer had, the quality of her record-keeping, and whether the date disclosed in each class member's "Date of Last Activity" field was an accurate reflection of the date of first delinquency on her account are all immaterial to whether Equifax's file disclosure practice amounted to a willful violation of the FCRA. Plaintiffs' argument that Equifax's file disclosures are unclear to the ordinary consumer is based upon an objective standard. *See Gillespie*, 484 F.3d at 941 ("The recording of multiple dates in the 'Date of Last Activity' can cause significant confusion and uncertainty for the consumer.").[2]

---

[2] Equifax cites *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184 (10th Cir. 2008), for the proposition that class treatment is inappropriate when accuracy is at issue. The Tenth Circuit affirmed the district court's denial of the plaintiff truck drivers' motion for class certification in that case. Their suit

(continued...)

Equifax's argument that individualized damages issues defeat predominance is similarly misplaced.  The statutory and punitive damages plaintiffs seek based on Equifax's common conduct require no individualized inquiries or quantifications of harm. *See Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387, 395 & n.5 (N.D. Ill. 2006) (noting that statutory damages are a substitute for actual damages and require no proof of actual injury).  Equifax's concern that plaintiffs' claims for punitive damages will present individual issues of willfulness, proportionality, and causality is unfounded.  Given the nature of plaintiffs' claims, this is not a case in which the amount of punitive damages is at all likely to differ from consumer to consumer, particularly in view of the plaintiffs' decision to eschew claims for actual damages.  Finally, as for Equifax's argument that certification of the case as a class action could lead to a punitive damages award disproportionate to the harm caused, the Seventh Circuit has made it clear "it is not appropriate to use procedural devices . . . to curtail the aggregate damages for violations" that one such as Equifax might "deem[ ] trivial."  *Murray*, 434 F.3d at 953. Confining any punitive damages award – if punitive damages are awarded to begin with, which is by no means clear – to a constitutionally acceptable amount is a matter appropriate taken up at a later stage in the case, not as a barrier to class certification. *Id.*[3]

---

(...continued)
turned entirely on the accuracy of particular descriptors in drivers' employment history reports that they contended were vague.  *Id.* at 1192.  In this case, by contrast, plaintiffs' claims concern Equifax's standardized characterization of particular disclosures; they contend the lack of clarity prevented them from even beginning to assess the accuracy of the data contained in their files.

[3]  Equifax cites the Supreme Court's decision in *Exxon Shipping Co. v. Baker*, — U.S. —, 128 S. Ct. 2605, 2625-26, 2634 n.28 (2008), in support of its argument that punitive
(continued...)

In sum, the outcome of this suit, whatever it may be, will turn on common evidence regarding Equifax's standard file disclosure practice, the legality of that practice, and if illegal whether Equifax's adoption of that standard practice amounted to a willful violation of the FCRA as *Safeco* defines willfulness.   It is hard to imagine a case in which the predominance of common over individual issues has been more clearly shown.

### b.      Superiority

Federal Rule of Civil Procedure 23(b)(3) requires plaintiffs to demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  A class action is a superior method of adjudication when "economies of time, effort, and expense" are achieved "without sacrificing procedural fairness."  *Amchem Prods.*, 521 U.S. at 614.  Consumer claims are considered particularly suitable for class treatment, "given the difficulty of bringing such claims individually and the common questions that are often involved."  *Cavin*, 236 F.R.D. at 395-96.  As the Seventh Circuit has stated, "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her

---

(...continued)

damages present an individualized issue that is not suitable for class treatment.  The Court does not read *Exxon* this way.  Although the Supreme Court observed that large class actions and punitive damages address a similar concern—the inadequacy of compensatory damages to encourage lawsuits in some circumstances, it stated that in class actions with large numbers of potential plaintiffs, "individual awards are not the touchstone" for calculating punitive damages.  *Id.* at 2634 n.28.

rights.'" *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Plaintiffs contend that a class action in this case is a superior method of adjudication because the class is manageable and consolidating consumers' claims generates efficiencies for those individuals and for the courts.  Plaintiffs also assert that a class action would promote important public policies and that absent  a class action, most class members would be unlikely to enforce their rights.

Equifax argues that class treatment is inappropriate in suits involving statutes with fee-shifting provisions, such as the FCRA.  But although it could have done so, Congress has not chosen to preclude class actions under the FCRA.  In addition, the Seventh Circuit observed in *Murray* that Rule 23(b)(3) "was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray*, 434 F.3d at 953. *Murray*, like this case, was a suit under the FCRA.

Equifax also argues that plaintiffs' claims will require individualized defenses and that as a result, "there is nothing to be gained by concentrating hundreds of thousands of individuals in this Court."  Def. Supp. Resp. at 13.  The prospect of hundreds of thousands of individualized suits – or (assuming only a small percentage of the potential class members would sue) even a few thousand or a few hundred – does not strike the Court as a superior method of proceeding.  In any event, as the Court has already indicated, any defenses that Equifax might mount would be common to all class members because plaintiffs challenge a uniform practice and do not seek actual damages.

16

Equifax again argues that its potential aggregate statutory liability renders class certification undesirable. But "[r]educing recoveries by forcing everyone to litigate independently . . . has little to recommend it." *See Murray*, 434 F.3d at 953 (noting that the FCRA is among "the cap-free group" of laws that impose no upper bounds on total recovery). If statutory damages do turn out to be substantial, the reason "does not lie in an 'abuse' of Rule 23," as Equifax contends, but rather "in the legislative decision to authorize awards as high as $1,000 per person, 15 U.S.C. § 1681n(a)(1)(A)," combined with Equifax's violation of the FCRA (if that is how the case ultimately comes out). *See id.*

Finally, the Court disagrees that plaintiffs have failed to demonstrate that a class action would be manageable because they have not set forth an acceptable trial plan. Although some courts may require plaintiffs to submit trial plans as part of their motions for class certification, *see* Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note, the Seventh Circuit has imposed no such requirement as a prerequisite to class certification. Furthermore, "a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—not matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Given the fact that plaintiffs challenge a common, standardized practice and seek statutory rather than actual damages, it is difficult to see how a trial would be terribly unwieldy.

For these reasons, the Court concludes that class adjudication is a superior method of proceeding in this case, preserving judicial resources and litigation costs without unfair prejudice to Equifax or anyone choosing to opt out of the class. The

17

proposed class therefore satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### 3. "Standing"

Equifax disputes that the proposed class has what it refers to as "standing" to pursue a class action based on willful violations of the FCRA, arguing that plaintiffs cannot maintain a willfulness claim under *Safeco*. In reality, this has nothing whatsoever to do with "standing." As the Seventh Circuit stated just yesterday, "[s]tanding is a prerequisite to *filing suit*, while the underlying merits of a claim (and the laws governing its resolution) determine whether the plaintiff is *entitled to relief*." *Arreola v. Godinez*, No. 07-1700, slip op. at 11-12 (7th Cir. Oct. 14, 2008) (emphasis in original). Whether the plaintiffs have a viable claim concerns the merits of their case, not their standing to pursue it or to seek class action status.

There is a good chance that what Equifax is trying to do by inserting this argument into its recently-filed supplemental brief is to obtain interlocutory review of the Court's recent denial of summary judgment as part of a request for interlocutory appeal of the class certification decision under Federal Rule of Civil Procedure 23(f). That effort – if that is what it is – will get Equifax nowhere. If it wishes to request an interlocutory appeal of the summary judgment ruling, it should do so directly, via a motion for certification under 28 U.S.C. § 1292(b), not via the back door. Though the Court recently expressed disinclination to certify the matter for interlocutory appeal, it is willing to entertain such a request, if one is properly made.

**Conclusion**

For the foregoing reasons, the Court grants plaintiffs' motion for class

certification [docket no. 45].  The parties are directed to meet and confer to attempt to

agree upon a proposed class notice.  They are to submit any agreed-upon proposal, or

separate proposals if they cannot agree, by no later than October 27, 2008.  The case

is set for a status hearing on October 31, 2008 at 9:30 a.m. for the purpose of

addressing the proposed notice as well as any other matters that remain to be

addressed prior to setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: October 15, 2008